UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No.     24-40450 |
| LPB MHC, LLC ) | |
| d/b/a Sam C. Mitchell & Assocs., ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| LPB MHC, LLC ) | |
| d/b/a Sam C. Mitchell & Assocs., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Adv. No.     25-04001 |
| ) | |
| FARMERS STATE BANK ) | |
| OF ALTO PASS, ) | |
| ) | |
| Defendant. ) | |

## O P I N I O N

Before the Court is a motion for summary judgment filed by Farmers State Bank of Alto Pass as to Counts IV and V of the complaint filed against it. For the reasons set forth herein, the motion for summary judgment will be denied.

## I.      Factual Background

The Debtor, LPB MHC d/b/a Sam C. Mitchell & Associates, filed its voluntary petition under Chapter 11 Subchapter V on November 5, 2024. Relevant to the issues here, in subsequently filed schedules, the Debtor listed Farmers State Bank as potentially having a secured claim against it in the amount of $2.4 million. The debt to Farmers State Bank was scheduled as

secured by "inventory, chattel paper, accounts, equipment, general intangibles, and fixtures." The debt was also marked as disputed.

The Debtor is a law firm engaged in the practice of law concentrating in personal injury and workers' compensation cases. The firm was owned and operated by member managers LPB Law, LLC, controlled by Attorney Lance P. Brown, and MHC Law, LLC, controlled by Attorney Matthew H. Caraway, until August 1, 2022. On that date, a revised operating agreement was signed adding BJZ Law, LLC, controlled by Attorney Brandon J. Zanotti, as a new member manager. Each of the LLCs was scheduled as owning a 33.33% interest in the Debtor upon execution of the revised agreement. Documents included in the filings of all parties reflect that BJZ Law paid $2.4 million for its interest in the Debtor using a loan funded by Farmers State Bank of Alto Pass, a bank at which Mr. Zanotti served on the board of directors. The $2.4 million payment was made by BJZ Law on October 12, 2022. The loan from Farmers State Bank was secured by Mr. Zanotti's personal guarantee, an insurance policy on the life of Mr. Zanotti, and certain real estate owned by SCM Real Estate LLC, a company formed and managed by Mr. Brown, Mr. Caraway, and Mr. Zanotti; the loan was also allegedly secured by a commercial security agreement signed by all three members of the Debtor. As part of the transaction, Mr. Zanotti, who previously served as Williamson County States Attorney, began practicing law with the Debtor firm and was compensated accordingly.

In early March 2024, Mr. Zanotti disclosed to Mr. Caraway that the FBI had approached him in September 2022 regarding a sale of real estate he had

been involved in and that he was being investigated for bank fraud and possibly other crimes related to that sale. On March 21, 2024, Mr. Zanotti pleaded guilty to federal felony charges. He was later sentenced to probation for two years. He is currently subject to disciplinary proceedings brought by the Illinois Attorney Registration and Disciplinary Commission. The Debtor has alleged that Mr. Zanotti was terminated as an employee at a meeting held April 30, 2024, and that BJZ Law was terminated as a member of the Debtor effective May 10, 2024.

After Mr. Zanotti's guilty plea and employment termination, BJZ Law defaulted on the loan. In an effort to collect on the obligation owed to it, Farmers State Bank turned to the Debtor. The bank sent notices to a number of attorneys representing defendants in cases in which the Debtor represented the plaintiffs. The notices claimed that the Debtor had "entered into an Assignment of all of its accounts and general intangibles" to Farmers State Bank. The notices directed the defense attorneys to remit any money due or which might become due to the Debtor to Farmers State Bank instead of the Debtor. The notices suggested that any questions or requests for documentary proof of the assignment be directed to Farmers State Bank's attorney. According to the Debtor, several defense attorneys who received the notices refused to issue settlement checks for the Debtor's clients without court order.

Farmers State Bank continued its collection efforts by sending a letter to the Debtor on October 1, 2024, threatening to contact the Debtor's clients directly. After receiving a response letter from the Debtor's attorney pointing out potential problems with the Bank's conduct, Farmers State Bank filed a lawsuit

in Williamson County, Illinois, seeking a declaratory judgment that it was entitled to make the contacts that it had and that it was not tortiously interfering with the Debtor. Not waiting to resolve either of those issues, within hours of filing the lawsuit, the bank sought a temporary restraining order against the Debtor and issued over 100 subpoenas to defense counsel involved in cases in which the Debtor represented the plaintiffs. The Chapter 11 bankruptcy case was filed to stop Farmers State Bank's continuing contacts that the Debtor believed interfered with its ability to represent its clients.

The Debtor filed its seven-count adversary complaint against Farmers State Bank in January 2025. The complaint recites the history of the relationship generally as set forth above in support of the relief requested. The first three counts of the complaint object to the claim filed by Farmers State Bank on its own behalf and to two claims that Farmers State Bank filed on behalf of BJZ Law and Brandon Zanotti; each such count seeks a determination of the amount, priority, and validity of each claim and any secured status asserted in such claims.[1] Count IV of the complaint purports to state a cause of action against Farmers State Bank for "Libel and Other Tortious Conduct" based on Farmers State Bank's communication with defense counsel involved in Debtor's cases. Count V seeks to equitably subordinate any claim of Farmers State Bank that might otherwise be allowed based on the alleged wrongful conduct. Count VI seeks a declaratory judgment regarding the existence and validity of the secured

---

[1] This Court currently has separate claim objections to the claims filed by Farmers State Bank on behalf of BJZ Law and Brandon Zanotti under advisement. A separate opinion and order will issue in due course as to those matters.

claims filed by Farmers State Bank on its own behalf and for BJZ Law. Count VII seeks a declaratory judgment regarding the value of any collateral supporting Farmers State Bank's secured claim as of the petition date.

Farmers State Bank filed a timely answer to the complaint and, one day after answering, filed a motion for summary judgment asking that Counts IV and V be dismissed with prejudice and that all other counts be dismissed without prejudice to the filing of claim objections in the main case. The motion for summary judgment contained no statement of material and uncontested facts and wholly failed to comply with the local rules for such motions. The motion for summary judgment was stricken due to that failure. In the order striking, Farmers State Bank was admonished that the motion for summary judgment appeared to be premature and was urged to exercise caution in refiling a similar motion in the short term. Nevertheless, one week later, Farmers State Bank filed another motion for summary judgment seeking judgment in its favor on Counts IV and V. Farmers State Bank also filed its memorandum of law in support of its motion. Because the newly filed documents generally complied with the local rules, a briefing schedule was set.

After seeking one extension of time, the Debtor filed a response to the motion for summary judgment requesting that summary judgment be denied; the response includes both admissions and denials of the facts alleged to be material and uncontested by Farmers State Bank. The response also includes additional facts that the Debtor claims are material and uncontested. The Debtor also filed a separate memorandum of law in support of its response. The filings

by the Debtor generally complied with the local rules. Farmers State Bank filed its reply in which it did not specifically respond to the additional facts set forth by the Debtor; the reply contains only argument, although some of the arguments are about the facts. Notwithstanding the failure of Farmers State Bank to fully comply with the local rules in the filing of its reply, this Court considers the matters fully briefed and ready for decision.[2]

## II.    Jurisdiction

This Court has jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11" pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Southern District of Illinois have been referred to the bankruptcy judges. SDIL-LR Br1001.1; *see* 28 U.S.C. §157(a). Matters concerning the administration of the estate and the allowance or disallowance of claims against the estate are core proceedings. 28 U.S.C. §157(b)(2)(A), (B).

Because actions for libel and other torts do not arise exclusively under the Bankruptcy Code and do not strictly arise in a bankruptcy case—the same causes of action often could be prosecuted under state law in a state court—this Court is exercising "related to" jurisdiction in this proceeding, raising the question of whether there is a constitutional impediment to the entry of a final judgment. *Exec. Benefits Ins. Agency v. Arkinson*, 573 U.S. 25, 37-38 (2014);

---

[2] After the briefing schedule was completed, Farmers State Bank filed two supplemental briefs without leave of court. The Court has reviewed the supplements and found neither to be particularly helpful in resolving the issues.

*Stern v. Marshall*, 564 U.S. 462, 493 (2011); *see* 28 U.S.C. §157(c). Impediments to the entry of a final judgment may be overcome by the knowing and voluntary consent of the parties to final adjudication by a bankruptcy judge. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015). Consent may be implied, requiring only that "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case" before the bankruptcy judge. *Jordan v. Pritchard (In re Pritchard)*, 633 B.R. 314, 325 (Bankr. E.D. Tenn. 2021) (quoting *Roell v. Withrow*, 538 U.S. 580, 590 (2003)).

Here, the Debtor's complaint contains a generic statement that the Court has jurisdiction over the matter "pursuant to 28 U.S.C. §§157(a) and 1334" and that it "is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(K)." The allegation does not contemplate that one or more of the causes of action asserted might be non-core or merely "related to" the bankruptcy, but it is followed by a statement that the Debtor "consents to the entry of a final order or judgment by the Bankruptcy Court in this matter." In its answer to the complaint, Farmers State Bank "admitted" the Debtor's allegation that the Court has jurisdiction over the matter and that it "is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(K)." But in response to the Debtor's statement of consent to entry of final order or judgment by the Court, the answer states that it "pleads a conclusion of law to which no answer is required." The motion for summary judgment now before the Court also does not respond to the Debtor's venue allegation, and neither Farmers State Bank's answer nor its motion for summary judgment contains a

separate statement of consent to entry of a final order or judgment by this Court per Bankruptcy Rule 7012(b).

Farmers State Bank's conduct in pursuing and defending against the present proceeding without contesting this Court's exercise of jurisdiction over the issues presented leads the Court to believe that it consents to the entry of final orders. It filed an answer that did not comply with Bankruptcy Rule 7012(b) by including "a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court" and then filed its motion for summary judgment asking the Court to enter judgment as a matter of law in its favor on Count IV of the complaint for libel and other tortious conduct. In doing so, Farmers State Bank has consented to entry of a final judgment on that count. *Maxwell v. Michael (In re Horizon Group Mgmt., LLC),* 652 B.R. 764, 777-78 (Bankr. N.D. Ill. 2023); *Reid v. Wolf (In re Wolf)*, 595 B.R. 735, 752-53 (Bankr. N.D. Ill. 2018).

That said, resolving Farmers State Bank's motion for summary judgment does not depend on the parties' consent to entry of final orders by the Court. Section 157(c)(1) expressly authorizes bankruptcy courts to hear non-core but related proceedings and limits only the court's ability to enter final orders or judgment. 28 U.S.C. §157(c)(1). Denial of summary judgment, however, is not a final order. *Davis v. CitiMortgage, Inc. (In re Davis)*, 2018 WL 587844, at *2 (Bankr. N.D. Ill. Jan. 25, 2018). Because Farmers State Bank's motion for summary judgment will be denied, the order to be entered here will not be a final order for which consent of the parties is required. *Id.*; *see also Paloian v. LaSalle*

*Bank Nat'l Assoc. (In re Doctors Hosp. of Hyde Park, Inc.)*, 463 B.R. 93, 100-01 (Bankr. N.D. Ill. 2011) (citing *Gecker v. Flynn (In re Emerald Casino, Inc.)*, 459 B.R. 298 (Bankr. N.D. Ill. 2011)). There are no jurisdictional impediments to the entry of this Opinion and the related order.

### III.    Legal Analysis

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which is applicable in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. *See* Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056. Summary judgment is an encouraged method for resolving cases and should be granted when there are no genuine disputes as to any material facts and a party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 327 (1986). A party moving for summary judgment has the burden of establishing that there are no material facts in dispute. *Id.* at 323. The movant must also establish that controlling substantive law supports a result in its favor. *ANR Advance Transp. Co. v. Int'l Brotherhood of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998). Unfortunately for Farmers State Bank, it failed to establish that there are no genuine issues of material fact in dispute or that it is entitled to judgment as a matter of law.

### A. *Material Issues of Fact in Dispute*

Farmers State Bank's list of uncontested facts set forth in its motion for summary judgment consists largely of statements about the relationships among

the parties and the execution of the loan documents at issue in this proceeding. In its response, the Debtor admits many of the basic statements of fact and parses the language of others in order to deny those facts. Many of the additional facts set forth by the Debtor in its response relate to the criminal charges and plea involving Mr. Zanotti and complain about the failure of Farmers State Bank to aggressively pursue Mr. Zanotti on the debt. Those facts and issues are important to the overall Chapter 11 case but have little to do with whether Farmers State Bank libeled the Debtor or otherwise tortiously interfered with the Debtor's business by sending notices to defense counsel. And such facts have little, if anything, to do with whether Farmers State Bank's claim, if otherwise allowable, should be equitably subordinated. Farmers State Bank did not admit or deny any of the Debtor's additional facts in its reply and thereby, for whatever it may be worth, allowed the facts to stand as uncontested for purposes of considering the motion for summary judgment.

One disputed fact raised by the Debtor does stand out and is sufficient to deny the motion for summary judgment. That disputed fact is whether two of the representatives of the Debtor—Mr. Brown and Mr. Caraway—signed the commercial security agreement.

In claiming that there is no dispute about the validity of the commercial security agreement, Farmers State Bank relies on the affidavit of Michael J. Hopkins, Community Bank President and Senior Lender, and the primary loan officer involved in closing the BJZ Law loan from Farmers State Bank. In his affidavit, Mr. Hopkins says that the commercial security agreement "was signed

by Lance Brown and Matthew Caraway on October 12, 2022, in the community room on the first floor of their office in West Frankfort, Illinois." Mr. Hopkins says that he was present at the law office for the signing, but that Mr. Zanotti was not. According to Mr. Hopkins, Mr. Brown and Mr. Caraway also signed two mortgages and an account agreement to add Mr. Caraway and Mr. Zanotti as authorized signatories on an account at Farmers State Bank held in the name of the Debtor. Mr. Brown was apparently already authorized to sign checks on the account. Mr. Hopkins says that he was instructed by Mr. Brown and Mr. Caraway at their meeting to deposit into the Debtor's account the $2.4 million in loans proceeds for the purchase by BJZ Law of its interest in the Debtor. According to Mr. Hopkins, later that same day both Mr. Brown and Mr. Caraway came into the Marion, Illinois, branch of Farmers State Bank and processed checks withdrawing the loan proceeds; Mr. Brown drew a check payable to LPB Law, LLC, in the amount of $1.2 million, and Mr. Caraway drew a check payable to MHC Law, LLC, in the same amount.

To dispute the validity of the commercial security agreement, the Debtor cites the sworn testimony of Mr. Brown and Mr. Caraway at the creditors meeting held in the main case on December 23, 2024.[3] Under questioning by an attorney for Farmers State Bank, Mr. Brown said: "I contest that commercial security agreement. I do not have a specific recollection of signing such a document, nor would I willingly do so, collateralizing and granting a security interest in the law

---

[3] A portion of the transcript of the creditors meeting was included as an exhibit to Farmers State Bank's motion for summary judgment.

firm and in specific cases that the bank has outlined. I don't think that's proper under the codes of ethics and would not have done so." Notwithstanding those comments, Mr. Brown agreed that that the signature on a copy of the commercial security agreement appeared to be his. Likewise, Mr. Caraway denied ever seeing the original commercial security agreement but agreed that one of the signatures on the copy appeared to be his.

Farmers State Bank asserts that the testimony of Mr. Brown and Mr. Caraway does not raise a genuine issue of factual dispute. It claims that their testimony that they did not sign the commercial security agreement is mere speculation and insufficient as a matter of law to defeat the motion for summary judgment. *See Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024). Although it is true that mere speculation is not enough to defeat summary judgment, the issues raised by Mr. Brown and Mr. Caraway are more than just speculation. Mr. Brown, in particular, does not just say that he does not recall signing the document; he says that he would not have signed the document if asked to do so because of ethical concerns. Mr. Hopkins does not say that he or anyone else at Farmers State Bank ever discussed the issue of the Debtor pledging all its assets to secure the debt of BJZ Law with Mr. Brown or Mr. Caraway. Rather, he says there was a discussion at the October 12 meeting about the mortgages and real estate valuations and merely notes that no questions were asked about the "loan documents."

As will be discussed in more detail below, the taking of a security interest in the accounts receivable and general intangibles of a law firm is a much more

nuanced transaction than the taking of a lien on the receivables of a typical manufacturing or service business. Although the provisions of Article 9 of the Uniform Commercial Code may apply to such law firm transactions, the collection of funds from clients and parties to lawsuits being prosecuted on behalf of clients are controlled not just by Article 9 but also, as Mr. Brown pointed out, by the rules of professional conduct and other applicable state law. Article 9 creates no exception for Farmers State Bank or attorneys with the Debtor's law firm from compliance with these other rules and laws. If, in fact, Farmers State Bank had ever requested of Mr. Brown and Mr. Caraway that they pledge the receivables and general intangibles of their law firm to secure the BJZ Law debt, it seems very likely that they would have had a serious discussion about how collection activities, if ever needed, might be carried out so as to avoid ethical problems for the lawyers involved. Based on what has been presented so far, it appears that discussion did not take place and therefore begs the question of whether any discussion of the pledge of assets by the Debtor ever occurred.

Mr. Hopkins points to an email sent to him by Lance Brown on May 19, 2022, that says financial information is attached, as well as a text exchange between the two around the same time in which Mr. Brown said he would have his secretary work on getting financial information for the Debtor to Mr. Hopkins; Mr. Hopkins claims that is proof that Mr. Brown and Mr. Caraway had agreed to pledge the Debtor's assets to secure the BJZ Law loan. Neither the email nor the text messages, however, make any reference whatsoever to such a pledge. Further, a document labelled "Regulation O Credit Approval" was issued by Mr.

Hopkins on May 31, 2022, recommending approval of the loan to Brandon Zanotti's "LLC to be named later" and detailing the collateral available to secure the loan and the financial analysis made to determine if the collateral was sufficient to support the recommended loan.[4] The collateral listed includes Mr. Zanotti's anticipated 33% ownership interest in the Debtor, real estate for which SCM Real Estate LLC subsequently executed mortgages in favor of Farmers State Bank, and an assignment of life insurance. The list of collateral, however, does not include the Debtor's assets. The Debtor's receivables and financials are discussed in the document, but it is in reference to calculating the value of Mr. Zanotti's 33% interest and his ability to service the debt with his share of expected distributions from the Debtor. Nowhere in the document is any anticipated lien on the Debtor's receivables or general intangibles mentioned.

Again, if such a lien was going to be given, a serious discussion of how collection of such assets might be undertaken should have occurred before the documents were signed. Based on the loan approval document dated May 31, 2022, if there was ever any discussion about a lien on the Debtor's assets, it almost certainly was not in the context of Mr. Brown providing financial information per the May 17 text messages and May 19 email to Mr. Hopkins. Mr. Hopkins' assertion in his affidavit about why financial information was provided by the Debtor as part of the loan approval process undercuts his credibility about how the commercial security agreement was signed, if it was in fact signed, by

---

[4] The document was attached as an exhibit to the Debtor's response to the motion for summary judgment in support of additional uncontested facts. Farmers State Bank made no response to the additional facts set forth in the Debtor's response and therefore would be deemed to have admitted the authenticity of the document.

Mr. Brown and Mr. Caraway. There is obviously more to the story, and summary judgment cannot be granted without the obvious discrepancies being resolved.

Farmers State Bank says there is no admissible evidence that could be presented to defeat the commercial security agreement. But Farmers State Bank likely has not completed enough discovery to have learned what evidence might be available. The limited evidence before the Court now creates an issue of disputed fact, and the Court cannot weigh that potential evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *S.N.A. Nut Co. v. Tulare Nut Co. (In re S.N.A. Nut Co.),* 197 B.R. 642, 647 (Bankr. N.D. Ill. 1996). There are many unanswered questions about what occurred here. Those questions may well be answered through discovery and could certainly be resolved in favor of Farmers State Bank. That is why the Court urged Farmers State Bank to hold off and conduct more discovery before refiling its motion for summary judgment. Farmers State Bank was not obligated to follow the Court's advice and chose not to do so. Having filed for summary judgment before thorough examinations of Mr. Brown and Mr. Caraway could be taken to find out the details of their defense, Farmers State Bank is now left with a genuine issue of disputed fact having been raised that compels denial of its motion.

## B. Controlling Legal Issues

The parties have briefed what they perceive to be the issues raised by the motion for summary judgment but, in large measure, have been distracted from the essence of the decisive issues. Farmers State Bank says that, because it has

a security interest in the Debtor's accounts receivable and general intangibles, it can take any and all collection actions with impunity and without regard to other laws. In its arguments, Farmers State Bank ignores the rules of professional conduct, Illinois law on settlement agreements, and Illinois law regarding the implied covenants of good faith and fair dealing. Each of these legal issues impact the decision here and will be discussed briefly.[5]

### 1. Illinois Rules of Professional Conduct

As attorneys licensed to practice law in Illinois, Mr. Brown and Mr. Caraway, along with any other lawyers employed by the Debtor, are subject to the Illinois Rules of Professional Conduct. Farmers State Bank does not contest this obvious point, but it argues that it can compel compliance with the terms of the commercial security agreement in ways that would result in the attorneys breaching their ethical duties under the Rules. They refuse to concede that the rights of Farmers State Bank might be constrained by the attorneys' compliance with their ethical duties. Although multiple rules are at issue here, a discussion of just two issues should suffice to establish how misguided Farmers State Bank was in its collection tactics.

A clear example of the problem relates to the attorneys' duties to maintain client confidentiality. Under the Illinois Rules, "[a] lawyer shall not reveal

---

[5] The Debtor recently filed an amended Chapter 11 plan that includes treatment of Farmers State Bank's claim in a manner that may reflect settlement between the parties. If the parties have fully settled their disputes and the amended plan is confirmed, this adversary proceeding will be dismissed. This Opinion is being issued notwithstanding the apparent settlement to bring closure to several contentious issues and to provide guidance to the parties on certain issues that may be helpful in their continuing relationship under the terms of the amended plan. A full-scale treatment of all legal issues is, however, no longer necessary.

information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted" by the other provisions of the Rules. Ill. R. Prof'l Conduct (2010) R. 1.6(a) (eff. Jan. 1, 2010). Those other provisions generally relate to disclosure necessary to prevent a client from committing a crime or fraud or under circumstances where the client has made a claim against the lawyer—all situations which do not exist in this case.

Farmers State Bank began its collection efforts by sending multiple letters to the Debtor quoting the commercial security agreement and demanding that the Debtor turn over "any and all documents evidencing or constituting the collateral." Compliance with the request would have required the Debtor to provide Farmers State Bank complete copies of all client files. The Debtor obviously could not comply because some of the information in the files would be confidential and subject to privilege. When the entirety of the Debtor's documents were not turned over, as they could not be, notices were sent to defense counsel demanding the turnover of funds. Farmers State Bank has since doubled down on the demands through discovery in this proceeding, requesting significant amounts of client information, including details of clients' specific damages and settlement negotiations.

Farmers State Bank suggests that some client information is public and not subject to the privilege because it is contained in the public court files or may have been provided to defense counsel without restriction. That may well be true. But the privilege belongs to the client, not the lawyers, and only the client

may waive the privilege. *In re the Marriage of Decker*, 153 Ill. 2d 298, 313, 606 N.E.2d 1094, 1101 (1992). Thus, the question of whether the privilege has been waived by public or other disclosure, and if so to what extent, necessarily impacts the clients' rights and cannot be resolved without the participation of the client. Involving every one of the Debtor's clients in the present parties' disputes would be burdensome, would likely negatively interfere with the relationship between the Debtor and its clients, and would serve no useful purpose.

Farmers State Bank has suggested in discovery dispute motions that the Debtor can produce privileged materials without client consent and without adverse consequences simply by stamping the materials "FOR ATTORNEY EYES ONLY." Apparently, Farmers State Bank's attorneys think that a lawyer can tell a client's secrets to another lawyer if the lawyer they tell promises to keep the information secret—the same promise the first lawyer made but is breaking with the disclosure. There is no authority for such a proposition; there is no legitimate end run around the fundamental ethics rules governing the practice of law by Mr. Brown, Mr. Caraway, and the other attorneys employed by the Debtor. Farmers State Bank's attorneys, also licensed in Illinois, should know better than to even suggest cutting ethical corners.

As stated above, collecting a law firm's receivables is a nuanced process. Client confidentiality and privilege limit the information that the Debtor can be compelled to provide as to any particular receivable or client file. Farmers State Bank and its attorneys should have taken this into consideration before making

the loan and certainly as it began collection activities.[6] Farmers State Bank's failure to account for these issues may result in liability, as will be explained below.

A second example of Farmers State Bank's failure to be alert to the overriding impact of ethical rules involves the rules governing the payment of fees and the required use of trust accounts by lawyers. In order to collect a contingent fee from a client as the Debtor frequently does in personal injury cases, a detailed written fee agreement is required. And when a case is resolved, the attorney must provide a written statement to the client outlining the gross amount of the settlement, the net amount to be paid to the client, and the calculation for determining that net amount. Ill. R. Prof'l Conduct (2010) R. 1.5 (eff. Jan. 1, 2010). All client funds received by an attorney—including the funds to be paid to the attorney for fees—must initially be safeguarded and deposited into a trust account until disbursement is authorized and the attorney's fees are fully earned. Ill. R. Prof'l Conduct (2010) R. 1.15 (eff. Jan. 1, 2010). An attorney must be authorized by the client to cash a settlement. *In re Turner*, 75 Ill. 2d 128, 132, 387 N.E.2d 282, 284 (1979) (quoting *In re Stillo,* 68 Ill. 2d 49, 54, 368 N.E.2d 897, 899 (1977)). An attorney's right to payment of a contingency fee is

---

[6] After the briefing schedule on the motion for summary judgment was completed, Farmers State Bank filed two supplemental briefs. Both purported to address concerns this Court had raised about the impact of the Rules of Professional Conduct on the matters at issue. Farmers State Bank cited a number of cases in its briefs. All the cases held that, under a variety of circumstances, Article 9 security interests could be taken in law firm receivables. None of the cases dealt with the ethical limitations that might occur if a creditor followed the path taken here of demanding access to client files in order to recognize on the security interest. None of the cases dealt with or even mentioned the Illinois Rules of Professional Conduct.

tied directly to his or her compliance with ethical obligations requiring a client's consent to cash a settlement check and disburse the proceeds.

Farmers State Bank could obtain from the Debtor no more than a lien on the attorneys' rights to the payment of fees after completing all tasks required on behalf of the client. Farmers State Bank cites no authority, and this Court finds none that would have allowed defense counsel or an insurance company to direct a portion of a client's settlement funds to Farmers State Bank without written direction from the client. And as explained below, Farmers State Bank could not have obtained such a direction without giving legal advice to the client and without interfering in the provision of legal services by the Debtor to the client. Farmers State Bank can make no credible claim that the commercial security agreement transferred to it the right to step into the Debtor's position and complete its duties to its clients. Likewise, the Court does not believe that the Debtor's attorneys could have transferred their ethical obligations to Farmers State Bank. Accordingly, there was no practical way for Farmers State Bank to reach the Debtor's interest in any contingent fee until the fee was fully earned and in the Debtor's trust account, and the client had authorized disbursement.

### 2. Illinois Law on Settlements

Under Illinois law, when parties have settled personal injury, property damage, wrongful death or other tort actions based on claims for money damages, the settlement may be enforced by the plaintiff by complying with the statute on the settlement of claims. 735 ILCS 5/2-2301. Generally, compliance

requires that, upon settlement, a plaintiff must promptly tender a release of his or her claims to the defendant and must also provide a release of any attorney's lien, along with releases of medical liens or alternative guarantees of payment of such medical liens by the plaintiff's attorney's agreement to hold funds for payment of such liens or an offer for the defendant to hold the funds for the lien payments. 735 ILCS 5/2-2301(a), (c). Only after the plaintiff has fully complied with the statutory requirements is the defendant obligated to pay the settlement amount, and then that full amount is to be paid to the plaintiff. 735 ILCS 5/2-2301(d). If timely payment is not made, a court may enter judgment against the defendant. 735 ILCS 5/2-2301(e). Defendants do not have to require that all the releases and documents be tendered, but it would be risky to pay out funds without resolving all possible liens. Compliance with this provision tracks the obligations of plaintiffs' attorneys under the rules to provide a client with the precise details of how their settlement proceeds will be disbursed. The Court believes that substantial compliance with this statutory provision is routine in the personal injury practice of law engaged in by the Debtor and the attorneys employed by it.

The requirements of the statute pose a problem for Farmers State Bank and its claim that it was acting within the law in making demands on defense counsel to pay it a share of settlement proceeds directly instead of paying the plaintiffs represented by the Debtor firm's attorneys. Farmers State Bank could not have drafted releases for the plaintiffs or even advised the plaintiffs on the appropriate terms of such releases. Farmers State Bank cannot practice law, and

its attorneys could not talk to or otherwise interfere with the actual representation of the Debtor's clients by the Debtor. Likewise, Farmers State Bank could not have drafted the releases for medical liens or advised the Debtor's clients about how such liens should be resolved. Farmers State Bank might have been able to release the attorney liens of the Debtor but, absent the other documents, the defendant in any particular case would still not have to pay the settlement amount; and, again, even if all the documents were otherwise provided, the statute provides that payment is to be made to the plaintiff, not to the lien holders. Thus, it seems clear that the notices sent by Farmers State Bank would never have resulted in direct payment by a defendant to Farmers State Bank, and Farmers State Bank could not have had a realistic belief that the notices would yield such a result. Interestingly, no assertion is made that any of the notices sent resulted in a penny being collected by Farmers State Bank.

The notices were obviously sent to get the Debtor's attention. But issuing notices as was done here, apparently for the purpose of embarrassing, intimidating, or bullying an adversary without any legitimate belief that payment would be forth coming, is not contemplated or condoned by Article 9 or the documents purportedly signed by the parties. Further, sending the notices could only serve to delay the issuance of payment to clients who owed nothing to Farmers State Bank, which is exactly what the Debtor alleges occurred. Farmers State Bank's claim that it could not possibly have tortiously interfered with the

Debtor's business contracts or expectancies or those of its clients is just not accurate.

### 3. Implied Covenant of Good Faith and Fair Dealing

Illinois law implies a covenant of good faith and fair dealing in every contract. *J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill. 2d 265, 278, 642 N.E.2d 1215, 1222 (1994); *Martindell v. Lake Shore Nat'l Bank*, 15 Ill. 2d 272, 286, 154 N.E.2d 683, 690-91 (1958). The Illinois Commercial Code expressly adopts a similar rule for contracts by providing that "[e]very contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement." 810 ILCS 5/1-304. The covenant does not create independent duties that are separately actionable; rather, the covenant serves as a guide for the construction of contracts. *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1105-06 (7th Cir. 1997).

"'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990). And although the covenant is referred to as a rule of construction used to determine the parties' intent, it is also appropriately described as a duty imposed, in Illinois, on every contracting party, regardless of intent. *Spadoni v. United Airlines, Inc.*, 2015 IL App (1st) 150458, ¶31, 47 N.E.3d 1152, 1160.

To the extent Farmers State Bank used the notices it claims were authorized by the commercial security agreement to embarrass, intimidate or bully the Debtor, it violated its duty of good faith and fair dealing. Farmers State Bank makes no assertion that its aggressive tactics were contemplated at the time of drafting the commercial security agreement. If there was no legitimate purpose to send the notices—and no credible purpose has been suggested—then the duties discussed here affect the construction of Farmers State Bank's rights and responsibilities under the commercial security agreement and strongly suggest that the sending of the notices was wrongful. The tactics must be measured not only by the express terms of the commercial security agreement but also by the standards of good faith and fair dealing. Under those standards, Farmers State Bank falls short and the commercial security agreement is not an absolute defense to the Debtor's claims.

### C. The Motion for Summary Judgment

The complaint filed by the Debtor begins with 55 paragraphs of allegations common to all counts. As set forth above, the first 3 counts then consist of objections to the claims filed by Farmers State Bank on its own behalf and on behalf of Brandon Zanotti and BJZ Law; those 3 counts add 21 more paragraphs to the complaint. Count IV, pleaded only against Farmers State Bank and labelled "Libel and Tortious Conduct of Farmers Bank," incorporates the preceding 76 paragraphs of the complaint and adds 5 more. Count V, seeking equitable subordination of the claims filed by Farmers State Bank on its own

behalf, begins by incorporating the same prior 76 paragraphs plus the 5 additional paragraphs added by Count IV. This style of pleading—incorporating by reference everything in the complaint and prior counts whether or not what is incorporated has anything to do with the cause of action attempted to be pleaded in the particular count—is an unfortunately common practice. But the practice of throwing all allegations into every count makes it difficult to determine exactly what has been pleaded that might actually be relevant to the particular count. Making a court weed through allegations that might be relevant to something in the case but not to the count at issue is, quite frankly, an annoying practice that does not benefit the pleader. Nevertheless, this Court has made an effort to understand the counts at issue here, and, although the draftmanship of the complaint as a whole is seriously lacking, Farmers State Bank's motion for summary judgment will not be granted.

In Count IV, the Debtor claims that it was libeled by Farmers State Bank because Farmers State Bank published notices to defense counsel saying that the Debtor had entered into an "Assignment" of all its rights in its receivables and general intangibles. The Debtor says that the use of the term "Assignment" is false and untrue. Although Count IV is labelled as pleading other tortious conduct, no other tort is identified, and a footnote suggests that more discovery is needed to fully identify all actionable tortious conduct of Farmers State Bank.

Farmers State Bank responded in its motion for summary judgment by citing one nonprecedential case holding that the granting of a security interest may properly be referred to as an assignment and claiming that, in any event,

the use of the term even if incorrect was not defamatory or libelous. It claims that, because the commercial security agreement authorized it to collect on the receivables and general intangibles, it could proceed as it had with absolute impunity.

Had Farmers State Bank filed a motion to dismiss for failure to state a claim upon which relief may be granted, it might well have prevailed as to Count IV. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. More than "an unadorned, the-defendant-unlawfully-harmed-me accusation" is required to state a plausible claim and avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Count IV provides no more than a general allegation of harm; it does not plead the elements of libel, and it does not even identify any other tort it attempts to plead. But Farmers State Bank did not seek dismissal under Rule 12(b)(6) by motion or in its answer. In the absence of any such request, the relief will not be granted. *See* Fed. R. Civ. P. 12(b)(6), (h)(2).

Farmers State Bank asks for a final judgment that its conduct was, in all respects, justified under the law. But it is clear from its own presentation of the facts that is simply not true. It asks the Court to interpret the commercial security agreement to allow conduct that likely would have interfered with the Debtor's client relationships and would have resulted in the attorneys employed by the Debtor violating their professional obligations. Because the professional obligations of Mr. Brown, Mr. Caraway, and the other attorneys working for the Debtor are totally entwined with their right to payment of fees, there can be no legitimate claim for payment of such fees without corresponding compliance with

and completion of all legal obligations due to their clients. Farmers State Bank could not substitute itself for the attorneys with respect to such duties and therefore could have had no reasonable expectation that, absent compliance with such duties, a right to payment of fees would arise and be enforceable. Its notices sent to defense counsel demanding direct payment therefore had no apparent chance of success, and Farmers State Bank makes no credible claim that it actually expected defense counsel to respond with payments. In the absence of any such credible argument, it is clear that Farmers State Bank acted wrongfully and is not entitled to summary judgment on Count IV notwithstanding the inartful drafting of the complaint.

As to Count V, the Debtor lists a series of "inequitable" actions by Farmers State Bank and claims that the conduct justifies equitable subordination of any allowed claim of Farmers State Bank. Equitable subordination may be ordered when a creditor's conduct has been inequitable, resulting in harm to other creditors with claims, and when the subordination would not otherwise contradict the Bankruptcy Code. *Off. Comm. of Unsecured Creditors of SGK Ventures, LLC v. NewKey Group, LLC (In re SGK Ventures, LLC)*, 521 B.R. 842, 862-63 (Bankr. N.D. Ill. 2014) (citations omitted). Whether a claim should be equitably subordinated is a highly subjective inquiry for which there are no clear guidelines. *In re Sentinel Mgmt. Group, Inc.*, 728 F.3d 660, 669 (7th Cir. 2013).

The list of alleged wrongful conduct by Farmers State Bank contained in Count V is both sufficient to state a claim and sufficient to avoid summary judgment. Farmers State Bank says that its conduct was not wrongful, but this

Court has already explained why that is not true.[7] It also points out that there are only a few other claims and contends that subordination of its claim is therefore not meaningful. That may be true, but it is not a basis to grant summary judgment. It should also be noted that in neither the original plan of reorganization nor the amended plan currently pending confirmation is the claim of Farmers State Bank treated as subordinated. Thus, the Debtor may not be seriously pursuing this remedy. That remains to be seen. For the time being, however, summary judgment must be denied.

## IV.   Conclusion

Summary judgment is only appropriate where the movant can show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Although motions for summary judgment generally may be filed at any time until 30 days after the close of discovery, they are typically only appropriate after all parties have had an opportunity take discovery and gather evidence in support of claims and defenses. That is why Farmers State Bank was encouraged to wait before refiling its motion after the original was stricken. The lack of opportunity for discovery is also a big part of why its refiled motion for summary judgment will be denied.

Without further development, the record before the Court shows a genuine dispute about material facts. Perhaps the facts, fleshed out after a meaningful

---

[7] Although the Court finds that Farmers State Bank acted wrongfully in its collection efforts, it makes no finding as to whether liability and damages can be proven on the causes of action asserted by the Debtor or any others that might be asserted.

opportunity for discovery, would support Farmers State Bank's position. But such a finding at this point would be premature. The Debtor raised a genuine dispute about the material facts underlying its claims, and the motion for summary judgment can be denied on that basis alone.

But Farmers State Bank also failed to show that it is entitled to judgment as a matter of law. The legal issues raised by this litigation are more complex than a strict reading of the commercial security agreement. The transaction must still be analyzed under Illinois laws governing contracts, which implies a covenant of good faith and fair dealing in every contract. The Illinois Rules of Professional Conduct and Illinois law on settlement agreements are also relevant given the nature of the purported security interest in the Debtor law firm's accounts and intangibles. Because Farmers State Bank did not address these or any other relevant laws or authority, it has failed to establish its entitlement to judgment as a matter of law.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.


ENTERED: June 26, 2025

/s/ Mary P. Gorman
_____
UNITED STATES BANKRUPTCY JUDGE